**FRED RILEY HOME BUILDING CORPORATION, Bonnie's Designs, Inc., Plaintiffs,**

**Don Julian dba Don Julian Builders, Intervenor,**

v.

**Charles COSGROVE dba Traditional Homes, Traditional Homes, Inc., A Kansas Corporation, Michael Nolte, Landau Investment Company, Inc., L & N Properties, Sam Nussbaum, and Glen Ladd, Defendants.**

No. 93–2313–KHV.

United States District Court, D. Kansas.

March 20, 1995.

**1480**

Clifford A. Cohen, Buck, Bohm & Stein, P.C., Leawood, KS, Mark E. Brown, Gerald M. Kraai, Kent R. Erickson, Litman, McMahon & Brown, Kansas City, MO, Kevin D. Case, Office of Atty. Gen., Topeka, KS, for Fred Riley Home Bldg. Corp., Bonnie's Designs, Inc.

Mark E. Brown, Kent R. Erickson, Litman, McMahon & Brown, Kansas City, MO, for Brad True Inc., Don Julian dba Don Julian Builders.

Charles Cosgrove, Kansas City, MO, pro se.

Kurt D. Tilton, Brian L. Smith, Smith, Bellar & Tilton, P.C., Phillip A. Miller, Phyllis G. Leach, Watson & Marshall L.C., Kansas City, MO, for Charles Cosgrove dba Traditional Homes, Traditional Homes, Inc., a Kansas Corp.

Michael Yakimo, Jr., D.A.N. Chase, Chase & Yakimo, Overland Park, KS, for Richard Beaman dba The Drawing Room.

Joseph B. Bowman, Penny R. Slicer, Devon A. Rolf, Kokjer, Kircher, Bowman & Johnson, Kansas City, MO, for Michael Nolte.

Charles O. Thomas, Bonner Springs, KS, for Overland Cabinet Co., Inc.

David W. Hauber, Kenneth E. Holm, Boddington & Brown, Chtd., Kansas City, KS, Don M. Bradley, Michael B. Hurd, Shook, Hardy & Bacon, Kansas City, MO, for Landau Investment Co., Inc.

David W. Hauber, Boddington & Brown, Chtd., Kansas City, KS, Don M. Bradley, Michael B. Hurd, Shook, Hardy & Bacon, Kansas City, MO, for L & N Properties, Sam Nussbaum, Glen Ladd.

Mark C. Owens, James R. Orr, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Mark E. Brown, Kent R. Erickson, Litman, McMahon & Brown, Kansas City, MO, for Don Julian.

### MEMORANDUM AND ORDER

NEWMAN, United States Magistrate Judge.

Now pending before the court are the following post-trial motions (doc. 237) filed by plaintiffs:

1. Motion for New Trial on Century House Infringement by Plaintiff Riley;

2. Motion to Alter or Amend Judgment or for Entry of Judgment as a Matter of Law as to Count I;

3. Motion to Amend Judgment or for Judgment as a Matter of Law on Count II as to Defendants' Profits;

4. Motion for Reconsideration of Judgment on Count III; and

5. Motion to Amend Judgment to Include Award of Costs of Service.

Plaintiffs' motions address only the court's findings of fact and conclusions of law and do not challenge rulings on the admissibility of

evidence or instruction of the jury. The issues related to plaintiff Bonnie's Designs, Inc. have been resolved and the motions will be considered on behalf of plaintiffs Fred Riley Home Building Corporation ("Riley") and Don Julian d/b/a Don Julian Builders ("Julian") only.

**Motion for New Trial on Century House Infringement by Plaintiffs Riley.**

■ Plaintiff Riley seeks a new trial pursuant to Fed.R.Civ.P. 59(a) on its claims under Count I for infringement of a copyright in Century House. Generally, motions for new trial are committed to the discretion of the district court. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). The trial court has broad discretion in ruling on a motion for new trial. *Brownlow v. Aman*, 740 F.2d 1476, 1491 (10th Cir.1984).

Riley argues that the court erred in finding that the copyright registration as to Century House was invalid. It claims that it presented prima facie evidence that Century House was subject to a valid copyright as a derivative architectural work of the Summit House and, therefore, it was entitled to have the jury consider its claims of infringement as to the Century House copyright.

■ 17 U.S.C. § 410 provides that the certificate of registration shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate. However, the evidentiary weight to be accorded to the certificate is within the discretion of the court. Once the plaintiff produces a copyright certificate he establishes a prima facie case of validity of the copyright and the burden of production shifts to the defendant to introduce evidence of invalidity. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 826 (11th Cir.1982). The presumption created by the prima facie evidence is not irrebuttable. When evidence is offered which casts doubt on the question of the validity of the copyright, validity will not be presumed. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980). When evidence is presented disputing the copyright the ultimate burden of proof of its validity is with the party claiming under it.

*Keeler Brass Company v. Continental Brass Company*, 862 F.2d 1063 (4th Cir.1988). The presumption merely orders the burdens of proof. "The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." *Carol Barnhart, Inc. v. Economy Cover Corporation*, 773 F.2d 411, 414 (2d Cir.1985). The shifting of the burden on production of evidence is similar to that employed in Title VII cases with the ultimate burden of persuasion remaining with the plaintiff. Cf. *Murray v. City of Sapulpa*, 45 F.3d 1417 (10th Cir. 1995).

■ Riley failed to carry its burden of proof establishing the validity of this copyright. Simply presenting prima facie evidence of a copyright by admission into evidence of its registration does not require the court to submit the issue of its validity to the jury when the defendant has produced substantial competent evidence of invalidity and the plaintiff has failed to rebut the defendant's evidence.

■ At the time of trial, the court found that there was no evidence from which a jury could determine that the copyright, as to the Century House, was valid as a derivative work of the Summit House, co-authored by Riley and Bonnie's Designs. While Riley presented the copyright registration, defendants presented evidence directly controverting the facts contained in it. Defendants' evidence consisted of the testimony of Fred Riley, president of Riley, and Bonnie Lay, president of Bonnie's Designs, both of whom signed the copyright registration. Fred Riley testified that Lay did not participate in making the changes to the Summit House which formed the basis for the claimed derivative copyright on the Century House. He further testified that Riley did not claim ownership of the copyright until the filing of this action and that prior to that time he had recognized Bonnie's Designs as the holder of the copyright and had executed various disclaimers related to the copyright with the Home Builder's Association. The defendants

offered into evidence various entry forms submitted by Riley to the Home Builder's Association in which Riley represented that Bonnie's Designs was the owner of the copyright and wherein Riley disclaimed any interest in the copyright. Bonnie Lay testified that the Century House plans were drawn and Century House was constructed without her knowledge or consent; that Riley used portions of other elevations that she had drawn for other houses, without her knowledge, to create the elevation on Century House; and that the floor plans were the ones she had drawn for the Summit House. She testified that prior to the execution of the registration certificate there had been no writing between Bonnie's Designs and Riley related to the copyright. She further testified that prior to the registration of the copyright she had been the owner of the copyright. Upon the admission of such evidence, the presumption created by the Certificate of Registration was rebutted and the burden was on Riley to prove, by a preponderance of the evidence, the essential elements necessary to establish ownership of the copyright. This, Riley failed to do.

■ Notwithstanding, the evidence concerning the preparation of the Century House plans was undisputed. Therefore, no issues of fact remained to be submitted to the jury. The court was required to apply the law to the undisputed facts. The evidence before the court established that the Century House was not a derivative work of the Summit House for the reasons stated in the court's original Memorandum and Order.

The copyright registration of the Century House alleged that Riley and Bonnie's Designs, Inc., were co-authors of a derivative work. However, the evidence was undisputed that Bonnie's Designs and Riley were not co-authors. The evidence further established that Century House was not a derivative work of Summit House.

The evidence was undisputed that Bonnie Lay, the president of Bonnie's Designs, did not knowingly participate in the preparation of the Century House plans, and was not aware of the preparation of the plans for or the construction of the Century House. There was no evidence of intent, at the time of the construction of the house, that Bonnie's Designs be a co-author in the work.

■ Riley's argument seems to be that a builder who is allowed to construct multiple homes from copyrighted plans may, by its own unilateral action, become a co-author of a derivative work described as the subsequently constructed home. Riley's reasoning is in error. Co-authorship requires an agreement or intent by the parties who claim co-authorship, to be co-authors at the time the copyrightable work is created. *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061 (7th Cir.1994); *Childress v. Taylor,* 945 F.2d 500 (2d Cir.1991); *Ashton–Tate Corp. v. Ross,* 916 F.2d 516 (9th Cir.1990). One may not become a co-author of a derivative work by default without the knowledge, consent, and agreement of the other alleged co-author. There is no evidence of such intent or agreement. Construction of a house from copyrighted plans does not qualify a builder for a claim of co-authorship in the architectural work described as the constructed house. Because of the working relationship between Riley and Bonnie's Designs, Riley may have been entitled to construct multiple dwellings from one set of plans, with or without modification to those plans. However, Riley's construction of a second house, with modifications to the plans, does not grant it co-authorship in the original copyright nor create an independent copyright in itself and the owner of the original copyright in the second house as co-authors of a derivative work.

■ Creation of a derivative work requires consent by the owner of the original copyright to the creation of a derivative copyrightable work. *Gracen v. Bradford Exchange,* 698 F.2d 300 (7th Cir.1983). Riley argues that given the working relationship between Riley and Bonnie's Designs that Riley had consent to construct homes from drawings of Bonnie's Designs and to revise same. The issue is not whether Riley had consent to construct multiple homes from drawings of Bonnie's Designs, it is whether there was consent to create a derivative copyrighted work. There was no evidence of any knowledge of or consent to the creation of the alleged derivative work.

Riley argues that there was no evidence that consent was *not present* and that consent may be established by the conduct of the parties. Riley cites no authority for the proposition that consent to the creation of a derivative work may be implied from the conduct of the parties and the court has been unable to find such authority. Riley had the burden of proof on this issue and failed to carry its burden.

■ A derivative work must be substantially different than the original work. The differences must be more than trivial and may not include actual or mechanical copying. *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.1976). Fundamentally, the work must be the original product of the claimant. *Id.; Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905 (2d Cir.1980). Such differences do not exist between the Century House and the Summit House. The floor plan to the Century House is identical to that of the Summit House. The elevation or facade was changed by a cut and paste method of incorporating features from other houses designed by Bonnie's Designs into Century House without the knowledge or consent of Bonnie's Designs. Such changes were not original to Riley and were not the work product of Riley. Accordingly, Riley's claim of co-authorship in the Century House, an alleged derivative work, fails.

■ Riley argues that the assignment of the copyright executed by Riley and Bonnie's Designs in June 1994, approximately six weeks before trial, verifies the co-ownership status of the Century House. Again, Riley misses the mark. The question at trial was whether the Century House was a copyrightable work and whether Riley and Bonnie's Designs were co-authors of a derivative work known as Century House. Under the issues tried there could not be co-ownership of Century House unless there was first co-authorship. The subsequent assignment was insufficient to establish a claim of co-authorship in Riley because co-authorship may not be determined by agreement after the fact. Co-authorship requires an intent of the parties to be co-authors at the time the work is created.

The undisputed evidence established that there was no intent of the parties to be co-authors at the time the Century House was created. Riley has cited no evidence produced during the trial of the case from which a jury could reasonably infer intent of Riley and Bonnie's Designs for co-authorship in Century House or intent to jointly create a derivative work. Bonnie Lay, one of the claimed co-authors, and the president of Bonnie's Designs, denied any such co-authorship. The conduct of the parties at all times since creation of the Summit House, the original work, and up to immediately prior to the filing of the certificate of registration is inconsistent with any such claim. The evidence was replete with claims in the copyright exclusively by Bonnie Lay or Bonnie's Designs. The copyright was noted in various publications by the Home Builders Association. Riley repeatedly executed forms for the Association's publications in which it represented that it did not claim a copyright in the plans.

■ Riley argues that there was no showing that consent is a requisite element of joint authorship, provided the requisite intention of joint authorship was present. There was no evidence to establish an intention between Riley and Bonnie's Designs to be co-authors in the Century House at the time that it was constructed. While consent is not an element of co-authorship, it is an element required for proof of a derivative work. In proving a derivative work, the plaintiff must prove that the claimant of the derivative work had the consent of the owner of the original copyright for the creation of such derivative work. There was no such evidence at the trial. To the contrary, the evidence was that the owner of the copyright in the original work had no knowledge of the creation of the derivative work prior to its creation. The motion is overruled.

**Motion to alter or amend judgment or for an entry of judgment as a matter of law as to Count I.**

■ Riley moves the court to amend the judgment on Count I or to enter judgment pursuant to Fed.R.Civ.P. 50 in favor of plaintiff Riley, for infringement of the copyright

on the Summit House and to grant injunctive relief with respect to the Summit House. Riley argues that it is entitled to such relief due to the execution of a written assignment of the copyright in the Summit House which the court found was owned by Bonnie's Designs, such assignment being executed on or about June 20, 1994.

The final Pretrial Order was entered in this action on May 10, 1994. At that time, Riley's claim was as a co-author and co-owner of the copyright in the Summit House, recorded as Registration No. VA 573,726. The assignment of this copyright registration was not executed until June 20, 1994. By its terms, the parties assigned, each to the other, an interest in the copyright in question. The assignment of the copyright registration did not exist and had not been executed at the time of entry of the final Pretrial Order. The trial commenced on August 1, 1994. The case was tried under a final Pretrial Order, alleging co-authorship and co-ownership under Registration No. VA 573,726. The parties tried and argued the case on behalf of Riley on the basis of ownership acquired by co-authorship. The instructions and the verdict form, to which there was no objection, clearly contemplated a determination by the jury of Riley's interest in the Summit House copyright under its claim of co-authorship. The court entered judgment by Memorandum and Order, incorporating its findings and conclusions on August 19, 1994.

Riley's first request for entry of judgment based upon the assignment of the copyright was made upon the filing of the instant motion on September 2, 1994. Only after the court made findings of fact noting the assignment of the copyright by virtue of the June 20, 1994, document, did Riley make claim that judgment should be entered in its favor on the basis of the assignment. At no time during the trial or prior to entry of judgment, did Riley request amendment of the Pretrial Order to include a claim of ownership under the assignment. Only by virtue of an after-thought contained in Riley's reply to the defendants' response to its motion for judgment did Riley seek leave to amend.

Riley's motion for amendment contained in its reply memorandum is improperly presented to the court and is untimely. Fed.R.Civ.P. 15(a) provides that leave to amend should be "freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In ruling on a motion to amend, the court is guided by such factors as bad faith, unexplained delay of the plaintiffs, prejudice to the opposing party, and futility of such an amendment. *Dickerson v. City Bank & Trust Co.,* 575 F.Supp. 872, 876 (D.Kan.1983) (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 [1962] ). Riley's delay in presenting this amendment is unexplained. Prejudice to the defendants is apparent since defendants have not had an opportunity to raise whatever defenses they might have to the assignment.

Riley's motion for amendment is not properly presented under the court's rules. See D.Kan.Rule 206. A motion to amend with accompanying amended pleading and memorandum in support has not been filed. Inclusion of a request for amendment in a reply memorandum is not an appropriate way to present a motion for amendment to the court.

The case proceeded to trial and judgment on the basis of Riley's claim of co-authorship, not by virtue of assignment. The jury found that Riley was not a co-author of the architectural work known as the Summit House.

Following the submission of the evidence, plaintiffs were granted leave to amend the Pretrial Order to allow plaintiffs to proceed on the Summit House copyright as the claim had been previously pled in the plaintiffs' complaint, but not specifically included in the Pretrial Order. This amendment was permitted after the court determined that the evidence was insufficient to establish a claim of an independent copyright in a derivative work known as Century House. Riley did not, at that time, request leave to proceed based on the assignment.

Riley argues that it is entitled to injunctive relief and judgment because the assignment grants such rights. It contends that, therefore, it has the same standing as Bonnie's Designs to sue for acts of infringement and

injunctive relief. The court found in its original Memorandum and Order that Riley was not entitled to relief in that it was not a co-author of the architectural work and that it had no ownership interest in the copyright by virtue of its co-authorship. At the time the court entered judgment, there had been no amendment to the pleadings to assert this claim. While Riley might have been entitled to proceed under the assignment, had timely amendment been sought, its claim in this action was not based upon the assignment.

Riley essentially asks the court to allow it to proceed through trial and entry of judgment on one set of legal contentions and, when those contentions fail, to allow recovery on a legal theory not presented previously. This, the court declines to do. The court's judgment is based on issues asserted and identified by the parties at the final pretrial conference, presented at the trial, argued by the parties thereafter, and determined by the court. The court allowed amendment based upon the evidence admitted during the trial prior to argument of the case and instruction of the jury. The amendment now requested could have been requested at that time. Riley failed to make such request. The motion is overruled.

**Motion to enter jury verdict or to amend or alter judgment on Count III.**

■ Plaintiff Julian moves the court to enter judgment on the jury verdict or to alter and amend the judgment as to Count III in accordance with the jury verdict. Julian has made no new arguments, but has simply incorporated by reference his arguments made in various memoranda filed prior to the entry of judgment. While the court will not repeat its findings previously entered, but rather reaffirm them, the court does supplement its prior order upon this issue.

17 U.S.C. § 201(b) provides:

In the case of work made for hire, the employer ... is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 101 provides:

'[W]ork made for hire' is—

(1) a work prepared by an employee within the scope of his or her employment.

As previously noted in the court's Memorandum and Order, defendants presented evidence sufficient to rebut the prima facie case established by Julian's Certificate of Registration of his copyright. Julian, therefore, had the burden of proving the validity of his copyright in the architectural work known as Roseberry or Roseberry I. Since such copyright was claimed to be a derivative work of the Stratford House, Julian was required to prove his right to create a derivative work of the Stratford House. In that regard he was required to prove either that he was the owner of the copyright or that he had the consent of the owner of the copyright in the Stratford House to create a derivative work. Julian failed to carry this burden.

The evidence presented by Julian as to ownership of the copyright in the Stratford House was through two assignments executed by Robert L. Keith, who claimed to be the author of the work and its original owner. Mr. Keith testified that he prepared the work during a time period when he was employed as a home designer by Designworks, Inc., a company in the business of designing residential structures. At that time, he was secretary of the corporation and his compensation was a share of the profits generated from the corporate business. He had no written agreement with Designworks. In his testimony he claimed an oral agreement with Designworks which permitted him to prepare drawings on behalf of Julian and to maintain the copyright in those drawings individually. There was no evidence of such an agreement with Designworks presented to the court other than the testimony of Mr. Keith.

The evidence established that the plans for Stratford House were originally placed on blueprints bearing the logo of Designworks, Inc. As required by then applicable law, 17 U.S.C. § 401, the identity of the copyright

claimant was to be placed on the copyrighted work with the required copyright symbol and the year of first publication. The statutorily required copyright notice on the blueprints identified Designworks, Inc. as the owner. Mr. Keith's name did not appear at any place on the blueprints. Further, when Mr. Keith purportedly assigned his claimed copyright to the plans in November 1988, he did so under a written assignment which he executed on behalf of Designworks. The evidence was undisputed that at the time Mr. Keith signed the purported assignment he had no relationship to Designworks and was without authority to sign any document on its behalf. However, at trial Mr. Keith claimed that he signed the document on his own behalf, individually, notwithstanding that the name "Designworks" appeared under his signature. Other than this disputed document there was no evidence of a writing signed by Designworks transferring the copyright. Mr. Keith executed a second purported assignment in his own name in November 1993, only days before this action was filed.

Mr. Keith's oral testimony claiming to be the owner of the copyright in the Stratford House is not sufficient to raise an issue of fact to submit the question of the ownership of the copyright to the jury. The legally required notice of the copyright of Designworks on the plans for the Stratford House may not be overcome by oral testimony, claiming ownership, of the adverse claimant. To allow Julian to prove Keith's ownership of the copyright in Stratford House by the testimony of Keith in the face of the legally mandated copyright notice identifying ownership in a person other than Keith, without written evidence of written assignment of the copyright from the owner, would undermine the purpose and intent of the law at that time. To submit this issue to the jury would require the court to ignore the provisions of 17 U.S.C. § 401, requiring that the identity of the owner of the copyright appear on copies of the protected work. The court would further be required to disregard the provisions of 17 U.S.C. § 201(b) requiring that an agreement to allow an employee retaining authorship or ownership of copyrights in work performed while an employee be in writing signed by the parties. Julian

would also have the court ignore the written instrument purportedly executed on behalf of Designworks by Mr. Keith, allegedly transferring the copyright to Julian, after Keith's relationship with Designworks had terminated. Julian failed to carry his burden of pursuasion to establish ownership of the copyright in Keith prior to the alleged transfer to Julian. Further, there was no evidence of consent by Designworks to the preparation of a derivative work. Julian failed to carry his burden on this issue. There was no issue for jury determination. As noted previously, Julian's claim as to ownership by co-authorship of the Stratford plan fails for the reasons stated in the court's Memorandum and Order previously referenced. The motion is overruled.

**Motion to Amend Judgment to Include Award of Costs of Service.**

■ Riley moves the court to amend the judgment to include an award of costs of service of process. On March 3, 1994, U.S. District Judge Kathryn Vratil entered an order assessing costs in the amount of $2,249.50 against defendants jointly and severally under Fed.R.Civ.P. 4(c)(2)(D). The defendants now argue that the court should reconsider the costs assessed by Judge Vratil. Motions for reconsideration must be filed within 10 days of the entry of the order. D.Kan.Rule 206(f). Reconsideration at this date is untimely. The Clerk is directed to enter judgment under Fed.R.Civ.P. 58 for the costs of service of process in accordance with the order of Judge Vratil.

In sum, the plaintiffs' motions, except the Motion to Amend Judgment to Include Award of Costs of Service are overruled. The Motion to Amend Judgment to Include Award of Costs of Service is granted as set forth herein.

IT IS SO ORDERED.