Curtis P. CLOGSTON d/b/a
Low Tech, Plaintiff,

v.

AMERICAN ACADEMY OF ORTHO-
PAEDIC SURGEONS, an Illinois
Corporation, Defendant.

Civil Action No. SA–94–CA–0848.

United States District Court,
W.D. Texas,
San Antonio Division.

July 9, 1996.

Charles W. Hanor, Kirt S. O'Neill, Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, TX, for plaintiff.

Gale R. Peterson, Jack Daniel Harkins, Cox & Smith, Inc., San Antonio, TX, for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

PRADO, District Judge.

On this date the Court examined Defendant's Motion for Summary Judgment, Plaintiff's Motion for Partial Summary Judgment, and the parties' responses to those motions. After careful consideration of the papers and pleadings on file, the Court concludes that Defendant's motion should be granted and Plaintiff's motion should be denied.

### Background

The American Academy of Orthopaedic Surgeons (the "AAOS") is a not-for-profit corporation that provides educational and practice management services for orthopaedic surgeons and allied health professionals. In 1971, as part of its services, the AAOS published an instructional textbook book entitled *Emergency Care and Transportation of the Sick and Injured* (the "Orange Book"). The AAOS also published an accompanying slide set. Since that original edition, the AAOS has published periodic revisions of the book and slide set.

In 1984, the AAOS began work on the Fourth Edition of the Orange Book (the "Fourth Edition"). Dr. James D. Heckman was chairman of the Board of Editors for the Orange Book; Clogston was working in Dr. Heckman's department at the University of Texas Health Science Center at San Antonio. Dr. Heckman suggested that Clogston help prepare color photographs to replace the black and white photographs used in the book's earlier editions.

In May 1985, Clogston submitted a bid to the AAOS to take approximately 150 photographs for the Fourth Edition for $25,000, with additional work to be billed at $150 a photograph. The offer was accepted; Clogston and his assistant Dennis Havel performed the work under the assumed name "Low Tech." [1] Clogston ultimately delivered over 650 photographs to the AAOS and billed it for approximately $121,000. The parties disagree about the nature of the working relationship between Clogston and Dr. Heckman. Clogston asserts that Dr. Heckman provided only general guidance as to the subject matter of the photographs; the AAOS maintains Dr. Heckman gave Clogston specific descriptions of the photographs needed to illustrate the text.

The Fourth Edition, published in October of 1986, used approximately 450 of Clogston's photographs in the Orange Book and the accompanying slide set. In 1989, the AAOS began work on the Fifth Edition of the Orange Book; published in the Fall of 1991, that edition contained some of Clogston's photographs. In 1995, the AAOS published the Sixth Edition of the Orange Book. None of Clogston's photographs appeared in the Sixth Edition.

Clogston claims joint authorship of the Fourth Edition, and that the AAOS was without authorization to use his photographs in the Fifth Edition. As a putative joint author, Clogston claims he is a co-owner of the copyright in the Fourth Edition and is entitled to half of the AAOS's profits from the sales of the Fifth and Sixth Editions of the Orange Book and slide set. The AAOS denies that Clogston is a joint author of any edition of the Orange Book or slide set. The parties have now filed cross-motions for summary judgment.

### Summary Judgment Standard

A party is entitled to summary judgment when it demonstrates on the record that there is no genuine issue of material fact and

---

1. Havel later transferred any rights in the photographs to Clogston.

that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In meeting this burden, the movant need only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). When a summary judgment motion is properly supported, the opposing party may not rest on the allegations or denials of its pleadings, but must come forward with sufficient evidence to demonstrate a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To defeat a defendant's summary judgment motion, a plaintiff must direct a court's attention to evidence sufficient to establish a genuine issue of fact as to each material element on which plaintiff would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute concerning a material fact is "genuine" and sufficient to overcome a summary judgment motion "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment may be granted where "the [nonmovant's] evidence is merely colorable, or is not significantly probative." 477 U.S. at 249–50, 106 S.Ct. at 2511.

### Discussion

Clogston claims a right to profits from the Orange Book based on his assertion that he is a joint author, with the AAOS, of the Fourth Edition. Thus, the resolution of this case turns not on factual disputes, but on the definition of "joint author."

### A. *Joint Work*

 The Copyright Act defines a "joint work" as

> a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

17 U.S.C. § 101. This definition also defines a work of joint authorship. *Childress v. Taylor*, 945 F.2d 500, 505 (2nd Cir.1991). Although the statute does not define either "inseparable" or "interdependent," the courts have, based in part on the Copyright Act's legislative history, adopted fairly standard definitions. *See Id.; Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994). Parts of a unitary whole are considered "inseparable" when they have little or no meaning standing alone. *Childress*, 945 F.2d at 505; *Erickson*, 13 F.3d at 1068. For example, when two authors collaborate to produce one written text their contributions are inseparable. Parts of a unitary whole are considered "interdependent" when "they have some meaning standing alone but achieve their primary significance because of their combined effect." *Childress*, 945 F.2d at 505; *See also Erickson*, 13 F.3d at 1068. The lyrics and music of a song are often such interdependent parts. The authors of a joint work are co-owners of the copyright in that work. 17 U.S.C. § 201(a); *See also Community for Creative–Non–Violence v. Reid*, 490 U.S. 730, 753, 109 S.Ct. 2166, 2179, 104 L.Ed.2d 811 (1989).

While the terms inseparable, interdependent, and unitary whole have relatively clear meanings, the parties disagree about the nature of the intent necessary to create a joint work. The Fifth Circuit has not addressed this issue. Clogston maintains that the Copyright Act confines the Court's inquiry to whether the parties intended Clogston's photographs and the Fourth Edition's text to be "merged into inseparable or interdependent parts of a unitary whole." The AAOS suggests that such an inquiry is too limited, asserting that the Court must additionally determine whether the parties intended to co-author the Fourth Edition. *See Childress*, 945 F.2d at 508–09 (finding that joint authorship is determined by focusing on whether the parties regarded themselves as joint authors); *Erickson*, 13 F.3d at 1071 (finding that a putative joint author must establish that the parties intended to be joint authors at the time the work was created).

The Court concludes that the AAOS's proposed methodology correctly apprehends joint authorship. As the Second Circuit noted in *Childress*,

> Care must be taken to ensure that true collaborators in the creative process are

accorded the perquisites of co-authorship and to guard against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance.

*Childress,* 945 F.2d at 504. The *Childress* court held that reading the Copyright Act to require only an intent to create a unitary finished work was simplistic, and would "extend joint author status to many persons who are not likely to have been within the contemplation of Congress." *Id.* at 507. The better course was to inquire "how the putative joint authors regarded themselves in relation to the work." *Id.* at 508 (discussing case law).

■ This Court agrees. Focusing the inquiry on the relationship the parties intended while creating the work best allows the Court to distinguish between a contributor and a co-author. The Court further finds that making such a distinction strikes the proper balance between the rights of contributors and the rights of authors. *See Fred Riley Home Bldg. Corp. v. Cosgrove,* 883 F.Supp. 1478, 1482 (D.Kan.1995) ("Co-authorship requires an agreement or intent by the parties who claim co-authorship, to be co-authors at the time the copyrightable work is created."); *Muller v. Walt Disney Productions,* 871 F.Supp. 678, 685 (S.D.N.Y.1994) (holding that co-authorship hinges on "whether the persons regarded themselves as joint authors"); *Aymes v. Bonelli,* 1994 WL 97026, *1, 30 U.S.P.Q.2d 1718, 1719 (S.D.N.Y.1994), *aff'd,* 47 F.3d 23 (2nd Cir.1995) (finding that joint authorship requires the participants to "have regarded themselves as joint authors").

■ Under the *Childress* test, a party claiming joint authorship must establish that: 1) each of the collaborators intended the other to be a joint author of the work[2]; 2) each author's work was independently copyrightable; and 3) each author intended that his work be merged into inseparable or interdependent parts of the whole. *Childress,* 945 F.2d at 505–509; *See also Erickson,* 13 F.3d at 1068–71. With this test in mind, the

Court turns to Clogston's claims of joint authorship.

B. *Application*

■ The AAOS contends that Clogston's claims fail as a matter of law because neither Clogston ·nor the AAOS intended for Clogston to be a co-author of the Fourth Edition. To successfully oppose the AAOS' motion, Clogston must direct the Court's attention to evidence sufficient to establish a genuine question of fact on this issue.

Clogston maintains that there are objective indications that the parties intended to create a joint work. He first claims that he demanded and received billing as an author of the Fourth Edition and that he is listed as the principal photographer on the credits page of the book. The documentary evidence contradicts these contentions; neither Clogston's letter nor the book demonstrate that the parties intended to co-author the. Fourth Edition.

Clogston's May 1985, letter to the AAOS requests,

that credits be given for photography near the front of the text, and we suggest the following format:

> Photography by Low Tech
> (photographer's name)
> (second photographer's name)
> (etc.)

Pl.'s Opp'n to Def.'s Mot. for Summ.J., Ex. 11. The Fourth Edition lists the author as "The American Academy of Orthopaedic Surgeons." American Academy of Orthopaedic Surgeons, *Emergency Care and Transportation of the Sick and Injured* (4th ed. 1987). The credits page, along with credits for book design and production, contributing editor, medical illustration, technical illustration and cover design, lists photographers. *Id.* at iv. The photography credits appear as:

*Photography:* Curtis P. Clogston, MD, *Director, Low Tech, Inc.*

---

2. By requiring that the putative co-authors intended to be joint authors, the Court is not requiring that the parties intended, or were even aware of, the legal ramifications of joint authorship. It is sufficient if the parties intended to both be authors as that term is commonly understood.

Dennis A. Havel, RPB, *Chief Photographer*

Thomas Vermersch

Andras Schoffer

John McGregor

William B. Love

Martha Hartzog

*Id.* · The credits in no way indicate that Clogston or his company was an "author" of the book, any more than they indicate that any of the other photographers or credited contributors were. In his deposition, Clogston's only complaint about the credits page was that the photography credit was in his name, rather than the name of his business, Low Tech.

The documentary evidence also contradicts Clogston's claim that he and Dr. Heckman received "equal billing" in the Fourth Edition. · As noted above, Clogston's "billing" is on the credits page, along with that of the other six photographers. Dr. Heckman's name appears as chairman of the Board of Editors on a separate page, in significantly larger type. However, even if Clogston's photographer credit and Dr. Heckman's editor credit had been "equal," the Court finds that Clogston's listing on the credits page, rather than with the AAOS on the title page, demonstrates the AAOS's intent at the time of publication that it be the sole author of the book.[3]

■ The evidence also refutes Clogston's contention that the nature of his work relationship with Dr. Heckman discloses the AAOS's intent that he be a co-author. Clogston testified at his deposition that he and Heckman

would meet and discuss the chapters and try to come to a consensus. He might have a list that was provided by a contributor. He might have had some notes he jotted down. He might have been more specific, but then we would discuss like what the standards of care were.... So a lot of things I would just say either it

didn't meet the standards of care or photographically it's not workable.

Clogston Dep. V.1 p. 68–69. However, Clogston also testified that Dr. Heckman "was the one that probably had the ultimate say-so about changes that were made [to the text] ... [and] had the ultimate approval authority over the photographs." Clogston Dep. V.3 p. 408. Clogston perceives the evidence to show that he and Dr. Heckman had a working relationship consistent with joint authorship, and an intention to create a joint work. While the AAOS disagrees with Clogston's characterization of the working relationship between Clogston and Dr. Heckman, the Court finds that the dispute is not material to the outcome of this case. Taking the evidence in the light most favorable to Clogston, a reasonable jury could find that Clogston's relationship with Dr. Heckman was "consistent" with joint authorship. However, no reasonable jury could find that this behavior, without more, manifested Dr. Heckman's or the AAOS's intent that Clogston co-author the Fourth Edition. *See Erickson,* 13 F.3d at 1068 (finding that suggestions for inclusion in a work do not by themselves result in joint authorship because "reliance on collaboration alone ... would be incompatible with the clear statutory mandate" that there be an intent to create a joint work).

The evidence that no joint authorship was intended comes even from Clogston's own testimony. At his deposition, Clogston was asked whether he believed he was a co-author of the Fourth Edition. Clogston answered, "That's a legal question that I don't know the answer to because I did—I did allow the Academy to use those slides in the Fourth Edition for the $150 a photograph. I don't know if that makes me a co-author or not." Clogston Dep. V.3, p. 398. However, when the AAOS's attorney began to clarify his questions, the following exchange occurred:

Q. When you drafted [the May 1985] letter, did you put anything in that letter · indicating that you would be considered a

---

3. Clogston argues that he may be an "author" despite being listed as a "photographer." The Court agrees, in principle. The fact that Clogston is listed as a "photographer" rather than as an "author" played no part in the Court's conclu-

sion. Had the Fourth Edition been credited to "The American Academy of Orthopaedic Surgeons—Text, Curtis P. Clogston—Photographs" the Court's decision might well have been different.

co-author of the Fourth Edition of this book? Yes or no?

A. Thank you for clarifying your question. No.

Q. Did you put anything in this letter indicating that you would be a co-author of the slide set associated with the Fourth Edition?

A. No.

Q. Was that your intent at the time that you drafted this letter?

A. My intent as to the Fourth Edition, no. I didn't have an intent as far as co-authorship.

Q. Did you talk to anyone at the American Academy or ORCO on or about May 2nd, 1985, about being a co-author of the Fourth Edition of the book?

A. Not that I recall.

Q. Have you talked to anybody at the Academy at any time about being a co-author of either the Fourth or Fifth Edition of the book or the slide set?

A. Not that I recall.

Q. Did Dr. Heckman at any time indicate to you that you would be a co-author of either the Fifth [sic] or Fifth Edition of this book and slide set?

A. No.

Q. Did Mr. Napolitano indicate to you at any time that you would be a co-author of the Fourth or Fifth Edition of this book and slide set?

A. If I can answer that question, you said anybody with the Academy. Nobody that I can recall said anything about it.

Q. Have you ever asked to be listed as a co-author on either the Fourth or Fifth Edition of the book and slide set?

A. I don't recall, and I don't know how the law would operate.

Q. I'm not asking about the law. Did you ask—

A. I think I am one whether I ask to be or not vis-a-vis the Fifth Edition.

Q. I'm not—That's not my question. Did you ever ask anyone to be listed as a co-author of either the Fourth Edition or Fifth Edition of the book or the slide set? Yes or no?

A. Not that I recall before the pleadings of this lawsuit.

Clogston Dep. V.3 p. 433–37.

Clogston suggests that these portions of his deposition testimony should be disregarded because the questions could be understood to call for his intent to reap the legal benefits of co-authorship—to be a co-owner of the copyright and share in the profits. The Court disagrees; the questions were clear.[4] Clogston's testimony will be considered not on the question of his intent regarding the legal consequences of co-authorship, but on how he and the AAOS "regarded themselves in relation to the work." *Childress*, 945 F.2d at 507. The Court finds that Clogston's deposition supports the AAOS's contention that Clogston did not intend to be a co-author of the book.

Faced with evidence that no joint authorship was contemplated, Clogston suggests that Dr. Heckman's deposition testimony should be disregarded as self-serving. However, since Dr. Heckman is the AAOS's representative, his subjective intent as to co-authorship with Clogston is paramount to the Court's inquiry. *See Childress*, 945 F.2d at 509 ("[W]hatever thought of co-authorship might have existed in Taylor's mind was emphatically not shared by the purported co-author."). Moreover, while both parties referred to Dr. Heckman's testimony in their pleadings, most of the specific portions of Dr. Heckman's testimony cited by the parties concern the nature of the working relationship between Dr. Heckman and Clogston.[5]

**4.** Clogston's opportunity for explaining that he thought the questions were vague came and went at the deposition.

**5.** Dr. Heckman also testified that he did not have any understanding of arrangements with Clogston regarding the ownership of the copyright in the photographs and that he thought the AAOS owned the copyright. While this is some evidence that Dr. Heckman did not intend that Clogston be a co-author of the Fourth Edition, the Court noted above that an understanding of the correct legal ramifications of co-authorship is not required.

The Court has already determined that the nature of that relationship was insufficient to create a material issue of fact to preclude summary judgment in favor of the AAOS.

■ Finally, Clogston argues that the nature of his contribution, it is undisputed that he provided approximately 90% of the photographs in the book, by itself demonstrates that he was a co-author of the Fourth Edition. While the AAOS agreed to the magnitude of Clogston's contribution, that contribution alone cannot support a finding that the AAOS agreed that Clogston should be a co-author of the book. As the Second Circuit noted,

> "Joint authorship entitles the co-authors to equal undivided interests in the work. . . . That equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors. The sharing of benefits in other relationships involving assistance in the creation of a copyrightable work can be more precisely calibrated by the participants in their contract negotiations regarding division of royalties or assignment of shares of ownership of the copyright, *see* 17 U.S.C. § 201(d)."

*Childress,* 945 F.2d at 508–09 (internal citations omitted). The Court is not attempting to minimize the importance of Clogston's photographs to the finished Fourth Edition; the importance of the contribution is simply not a relevant inquiry.[6] *See Weissmann v. Freeman,* 684 F.Supp. 1248, 1260 (S.D.N.Y. 1988), *aff'd in part, rev'd in part,* 868 F.2d 1313 (2nd Cir), *cert. denied,* 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989) ("The respective contributions of several authors to a single work need not be equal either quantitatively or qualitatively in order to constitute such contributors as joint authors.") The parties agreed that Clogston would be paid for his contribution to the Fourth Edition. The extent of Clogston's contribution alone is inadequate to create a genuine issue of material fact.

The Court finds that the evidence, taken in the light most favorable to Clogston, is insufficient as a matter of law to demonstrate that Clogston and the AAOS intended to be co-authors of the Fourth Edition. The Court therefore need not reach the second and third elements of the joint authorship inquiry or the AAOS's defenses of laches and estoppel.

### Conclusion

Because Clogston has failed to demonstrate that material questions of fact remain on the issue of the parties' intent, the Court finds as a matter of law that the parties did not have the requisite intent to become joint authors. As Clogston cannot prevail without a showing of intended joint authorship, the Court finds that the AAOS is entitled to summary judgment and Clogston's motion for summary judgment must be denied.

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

It is further ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

---

**6.** In fact, Clogston testified that he thought he was a joint author of the Fifth Edition. Clogston. Dep. V.3 p. 437. It is undisputed that, while approximately 150 of Clogston's photographs were used in the Fifth Edition, Clogston had absolutely no input in their selection.