**VISITOR INDUSTRIES PUBLICATIONS, INC.**

v.

**NOPG, L.L.C., et al.**

**No. CIV. A. 99–2543.**

United States District Court, E.D. Louisiana.

April 3, 2000.

Richard K. Leefe, Leefe, Gibbs & Koehler, Metairie, LA, for plaintiff.

Benjamin Richard Slater, III, Anne Elise Brown, Slater Law Firm, New Orleans, LA, for NOPG, L.L.C.

C.L. Hanes, Hollywood Beach, FL, pro se.

Richard John Tomeny, Jr., Metairie, LA, for Eileen Hodgins, defendant.

Destinations Interactive, Inc., Denholm Quebec, Canada, pro se.

## ORDER AND REASONS

VANCE, District Judge.

Before the Court are the motions of defendants New Orleans Publishing Group ("NOPG") and Eileen Hodgins, the former sales manager of Visitor Industries Publications, Inc. ("VIP"), to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motions are denied.

## I. Background

This case arises out of alleged copyright-infringements in connection with a CD-ROM produced for the New Orleans tourism market. In about December of 1995, plaintiff VIP, which publishes a monthly visitor information magazine entitled *Where New Orleans*, and defendant Desti-

nations Interactive ("DI"), agreed to create an informational CD-ROM for tourists. On April 30, 1996, VIP and DI entered into a written agreement, styled "Settlement Agreement," in which they agreed to co-venture the CD-ROM, entitled *New Orleans Interactive*, and then market and sell it to the general public. (*See* Hodgins' Mot. Dismiss Ex. 1, ¶ 1.) The agreement also provides as follows:

11. DI agrees that all of the editorial content provided by WHERE on the CD-ROM is WHERE's *"intellectual property"* and VIP agrees that all content provided by DI on the CD-ROM is DI's *"intellectual property"*. Both parties agree that their respective *"intellectual property"* cannot be used for other purposes beyond the CD-ROM project by either party without the expressed prior written consent of each party.

12. DI agrees to submit to VIP after the completion of production of the CD-ROM the total inventory of digital scans and all available raw video footage used in the production of the CD-ROM. This material will not be considered anyone's exclusive "intellectual property" with both parties authorized to reuse where applicable. All text information of advertisers will also be supplied to VIP.

(*See id.*) In late May of 1996, a dispute arose between C.L. Hanes, the president of DI, and Michelle Leblanc, the president of VIP, regarding the content of the CD-ROM and payments allegedly owed Hanes for production costs, sales and advertising revenue. As a result, Hanes refused to deliver the final version of the CD-ROM to VIP until he was paid the amounts VIP allegedly owed him under the agreement. In June of 1996, Hodgins resigned her position at VIP and became the publisher of *Arrive Magazine*, published by NOPG. *New Orleans Interactive* was never published.

In July of 1996, Hanes and DI sued VIP in state court to recover the amounts allegedly owed them under the agreement, and in August of that year, Hodgins sued VIP seeking to recover wages and commissions allegedly owed her.

In September of 1996, *Arrive Magazine* announced that it would produce a CD–ROM for the New Orleans tourism market. Hanes contracted with NOPG to produce it.

In October of 1996, VIP sued NOPG, Hanes, DI and Hodgins in state court, alleging violations of the Unfair Trade Practices Act, conversion, bad faith breach of contract, unauthorized taking of intellectual property, intentional torts, fraudulent misrepresentation, breach of fiduciary duty, and fraudulent concealment. VIP seeks injunctive relief and damages. The three cases were consolidated and are still pending.

On August 10, 1999, VIP obtained copyrights on written advertising scripts and an illustration of a voodoo dancing woman, which were included in the original CD–ROM. (*See* NOPG's Mot. Dismiss Ex. 2.)

On August 20, 1999, VIP sued the same defendants in this Court, alleging copyright infringement in violation of 17 U.S.C. § 106 and § 501. Specifically, VIP claims that in the *Arrive* CD–ROM, defendants unlawfully reproduced its intellectual property, consisting of the written advertising scripts and an illustration of a voodoo dancing woman. VIP also claims that they unlawfully created derivative works based on this copyrighted property, and that they unlawfully displayed, performed and distributed these works to the public. VIP seeks actual damages, profits attributable to defendants' alleged infringement of its copyrighted works, restitution of all benefits conferred on defendants by plaintiff, prejudgment interest, attorneys' fees and costs.

NOPG and Hodgins now move to dismiss VIP's complaint on the grounds that the original CD–ROM is a "joint work"

and that they therefore co-owned any copyright to it and had the right to reproduce it and prepare derivative works based on it.

## II. Discussion

### A. 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir.1991). The Court may not dismiss a claim unless it appears certain that the claimant cannot prove any set of facts in support of its claim that would entitle it to relief. *See Home Capital Collateral, Inc. v. Federal Deposit Ins. Corp.*, 96 F.3d 760, 764 (5th Cir.1996). In deciding a 12(b)(6) motion, courts may consider documents attached to or incorporated in the complaint. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Courts may also consider public documents or matters of public record. *See id.* at 1018; *accord Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994).

### B. Jurisdiction and General Copyright Law

Federal courts have exclusive jurisdiction of all actions that fall under §§ 102 and 103 of the Copyright Act of 1978. *See* 28 U.S.C. § 1338(a). Title 17, United States Code, Section 301(a) provides:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and *whether published or unpublished,* are governed

exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (West 1999), *emphasis added.* Under § 102,

[c]opyright protection subsists in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

17 U.S.C. § 102 (West 1999). These works include, among others, literary, musical, pictorial, graphic and audiovisual works, and motion pictures. *See id.* § 102(a). The CD–ROM at issue falls within the ambit of § 102(a). This Court therefore has jurisdiction to hear plaintiff's claims.

Defendants contend that the original CD–ROM was a joint work, co-owned by VIP, DI and Hanes, and that it was therefore lawful for them to reproduce it and to make derivative works based on it. They submit that any claim plaintiff has relating to the CD–ROM arises out of contract law, rather than copyright law.

 In order to establish a claim for copyright infringement, plaintiff must show that (1) he owns a valid copyright; and (2) the allegedly infringing parties copied constituent elements of the work that are original. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991), *citing Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985); *accord Quintanilla v. Texas Television Inc.,* 139 F.3d 494, 500 (5th Cir. 1998). "Under the Copyright Act, copyright ownership vests initially in the author or authors of the work." *Lulirama Ltd., Inc. v. Axcess Broadcast Serv., Inc.,* 128 F.3d 872, 876 (5th Cir.1997), *internal quotation marks omitted, quoting* 17

U.S.C. § 201(a). Generally, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id., quoting Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 2171, 104 L.Ed.2d 811 (1989). If parties have created a "joint work," they share an equal, undivided interest in that work under the Copyright Act and thus cannot maintain an infringement action against one another. *See* 17 U.S.C. §§ 101, 201(a); *see also Goodman v. Lee,* 78 F.3d 1007, 1011 (5th Cir.1996). That ownership interest extends to any portion of the joint work. *See Weissmann v. Freeman,* 868 F.2d 1313, 1318 (2d Cir.1989). A co-owner of a copyright must account to other co-owners for any profits he derives from the licensing or use of the product. "[T]he duty to account does not derive from the copyright law's proscription of infringement[,]" however, but from general principles that govern the rights of co-owners. *See Goodman,* 78 F.3d at 1012. Therefore, if the CD–ROM is a joint work, a co-owner would be liable for VIP's share of any profits derived from the use or licensing of the CD–ROM, but not for infringement of the copyright. *See Quintanilla,* 139 F.3d at 498.

Section 106 provides that the owner of a copyright, which includes the co-owner of a joint work, has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies[;]

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership[;]

(4) . . . to perform the copyrighted work publicly;

(5) . . . to display the copyrighted work publicly[.]

17 U.S.C. § 106 (West 1999). Thus, if DI and VIP are indeed coauthors of a joint work (the original CD–ROM), DI has an

undivided equal share in the CD–ROM and is therefore legally entitled to prepare derivative works based on it, and/or to distribute, perform or display that derivative, the original CD–ROM or any portion thereof. In addition, pursuant to § 106, DI may authorize another entity to do any of these things. Therefore, that plaintiff holds valid copyrights on those portions of the CD–ROM that are the subject this lawsuit does not enable it to bring an infringement claim against defendants if it turns out that the CD–ROM is a joint work, *and* that NOPG and Hodgins were authorized to use the CD–ROM in any of the ways listed in § 106. On the other hand, if the CD–ROM is not a joint work, plaintiff's claim will withstand a motion to dismiss under Rule 12(b)(6). This Court must therefore determine whether the CD–ROM is a joint work.

## C. Joint Work

■ Title 17, United States Code, Section 101 defines a joint work as follows:

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

17 U.S.C. § 101 (West 1999), *as amended by* Pub.L. No. 106–113, 113 Stat. 1501 (1999). The Act does not define "inseparable" or "interdependent;" however, appellate courts have recognized and the legislative history provides that "[t]he touchstone here is the *intention,* at the time the writing is done, that the parts be absorbed or combined into an integrated unit." *See Thomson v. Larson,* 147 F.3d 195, 199 (2d Cir.1998), *quoting* H.R. REP. No. 1476, at 121 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5735, *emphasis added; Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1068 (7th Cir.1994) (same). In determining whether a product is a joint work under the Copyright Act, the Second Circuit in a widely followed opinion held that the parties must both collaborate and intend to create a unitary whole. *See Childress v. Taylor,* 945 F.2d 500, 505–06 (2d Cir.1991);

*accord Thomson,* 147 F.3d at 200; *Erickson,* 13 F.3d at 1068–69. "Even if two or more persons collaborate with the intent to create a unitary work, [however,] the product will be considered a 'joint work' only if the collaborators can be considered 'authors.'" *Erickson,* 13 F.3d at 1069. In order to determine authorship, most courts have adopted the "copyrightability test," formulated by Professor Paul Goldstein. *See, e.g., id.* at 1070 (holding that copyrightability test is preferable to Nimmer's *de minimus* standard). Under the copyrightability standard,

[a] collaborative contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright.

*Id., quoting* PAUL GOLDSTEIN, COPYRIGHT: PRINCIPLES, LAW, AND PRACTICE § 4.2.1.2, at 379 (1989). As quoted above, an author must contribute more than mere directions or ideas to a work to gain copyright protection under the Act; he must translate an idea into a fixed, tangible expression. *See Lulirama,* 128 F.3d at 876. Section 101 explains the "fixed" requirement:

[a] work is "fixed" in a tangible medium of expression when its embodiment in a copy ... by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced or otherwise communicated for a period of more than transitory duration.

17 U.S.C. § 101.

Because the Fifth Circuit has yet to delineate the precise requirements for authorship under § 101, district courts in this circuit have sought guidance from the Second and Seventh Circuits in determining whether a product is a joint work. *See BTE v. Bonnecaze,* 43 F.Supp.2d 619, 622–23 (E.D.La.1999) (citing *Thomson, Childress* and *Erickson* ); *Clogston v. American Academy of Orthopaedic Surgeons,*

930 F.Supp. 1156, 1158 (W.D.Tex.1996) (citing *Erickson* and *Childress*). Under this approach, parties are co-authors who created a joint work when they (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors at the time the work was created. *Childress*, 945 F.2d at 507–08; *accord Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir.1998); *Erickson*, 13 F.3d at 1070–71. This Court agrees that this test "ensure[s] that true collaborators in the creative process are accorded the perquisites of co-authorship and [ ] guard[s] against the risk that a sole author is denied exclusive authorship status simply because another person rendered some form of assistance." *Childress*, 945 F.2d at 504. Thus, this Court will apply the *Childress* test to this case.

**1. Contribution of Copyrightable Materials**

■ The agreement indicates that both parties were to contribute certain "content" in their collaborative efforts to produce the original CD–ROM. (*See* Hodgins' Mot. Dismiss Ex. 1, ¶ 11.) It is clear that at least some of VIP's contributions were separately copyrightable, because VIP obtained copyrights on its advertising scripts and voodoo doll illustration in August of 1999, and defendants do not dispute the validity of these copyrights. (*See* Complaint, ¶ 14–15; NOPG's Mot. Dismiss Ex. 2.) Nevertheless, this Court cannot determine what DI contributed and whether its contributions were independently copyrightable. NOPG claims with no supporting evidence that it contributed video footage, photographs and a computer image of the dancing voodoo doll to the original CD–ROM, and states conclusorily that these materials are independently copyrightable. (*See* NOPG's Mot. Dismiss at 6.) The CD–ROM and these alleged contributions are not before the Court, however, and the Court cannot assume on a Rule 12(b)(6) motion the truth of defendant's assertion that they contributed these materials and that they were original. Further, it is not clear from the complaint, the agreement or the state court petition what, exactly, DI contributed, and whether its contributions were independently copyrightable. For example, plaintiff's state court complaint alleges that the agreement at issue "called for Hanes and DII [Destinations Interactive, Inc.] to perform all production work on the CD–ROM, including all scanning, voice overs, script work, videos, element integration, art direction, digitizing and uploading of client ads...." (NOPG's Mot. Dismiss Ex. 1, ¶ 12.) This suggests that some of the work Hanes/DI was to contribute was technical assistance, rather than copyrightable work. The complaint also alleges that DI breached the settlement agreement by failing to complete most of the work it was supposed to perform, and that as a result, VIP performed most of that work (*See id.* ¶¶ 13–14, 18–19.):

> After entering into the Agreement ... it became apparent that Hanes and DII had grossly misrepresented their capabilities, and they were unable to perform the functions they had agree [sic] to perform toward the production of the VIP CD–ROM. It became necessary for VIP to perform most of the critical work necessary for production of the CD–ROM.

(*Id.* ¶ 19.) Given this allegation, and because there is no evidence of DI's contributions before the Court, neither the agreement nor NOPG's memorandum is a reliable indicator of what Hanes/DI actually contributed. In short, this Court cannot determine from the pleadings whether the CD–ROM is a joint work. If it is not, VIP may have a viable copyright infringement claim against defendants. Thus, defendants' motions to dismiss under Rule 12(b)(6) must be denied.

**III. Conclusion**

For the foregoing reasons, defendants' motions to dismiss are denied.